## Faure. *vs.* Martin.

The defendant agreed to sell to the plaintiff " all that certain farm or lot of land now in her possession and whereon she resides, and whereof J. M. died seised, containing ninety-six acres, be the·same more or less, for the sum of sixty dollars per acre."   *Held*, that the contract was for the sale of the farm in *bulk*, and not *by the acre;* the mention of the number of acres being merely descriptive, and not of the essence of the contract.

In an action by a purchaser against the vendor, for relief, on the ground that the purchase was by the acre, and there was a deficiency in the quantity represented; lapse of time and the acceptance of·a deed, constitute a good defense.

Margaret Faure, the plaintiff, by her son John R. Faure, as her agent, and for her benefit, on the 11th day of September, 1846, entered into an article of agreement under seal, with the defendant, Catharine Martin, of Red Hook, Dutchess county, widow of Jacob Martin, deceased, and general guardian of Beattie Martin, child and sole heir of the said Jacob Martin, in and by which said Catharine Martin agreed to sell the farm of land in her possession, and whereon she then resided, and whereof the said Jacob Martin died seised, "containing ninety-six acres, be the same more or less, for the sum of sixty dollars per acre;" and the said John R. Faure agreed to purchase at the said price and upon said terms and conditions.   Said Catharine Martin further agreed, to proceed and procure the order of some proper court·to enable her to give a good and valid title thereto; and she agreed to convey the same on the 1st day of April, 1850, provided such order was obtained.   The title to a·certain meadow

Faure *v.* Martin.

lot belonging to said farm, containing eight acres, more or less, was in dispute, and a suit pending to test the title thereto; if the same was not settled, or decided, when the order should be obtained, the amount of the purchase money of that portion was not to be paid until a good title could be given or furnished; but in any event, the said Catharine agreed to convey the same, or so much thereof as she could obtain. On the first day of April, 1847, Catharine Martin executed the deed to the plaintiff, in which the farm was described according to a deed from Edward Radcliff, executor of Gertrude Van Ness, deceased, to the said Jacob Martin, except as to quantity; said Radcliff deed, which was in the possession of said Catharine Martin, and unknown to the plaintiff, stated the farm to contain 94 acres, more or less. The defendant, in her deed to the plaintiff, stated the farm to contain 96 acres. And upon representation that the farm did contain 96 acres, the plaintiff received the deed, and paid and secured the payment of the sum of $5280; $1100 of which was secured by mortgage on the same premises—which was the purchase money of 88 acres, at $60 per acre. And inasmuch as the dispute in regard to the meadow lot of eight acres, was not determined, the original agreement in reference thereto was continued between the parties; the plaintiff thereby paying, securing and agreeing to pay for 96 acres of land. After the execution of said deed of the 1st of April, 1847, and the giving of said mortgage of $1100, the plaintiff discovered, as she alledged in her complaint, that the whole farm, including the eight acre meadow lot, contained only 86 acres of land; and that the farm fell short 10 acres of the quantity represented and pretended to be conveyed; and that the said mortgage ought to have secured only the sum of $500, instead of $1100. The complaint also charged that the defendant falsely, fraudulently, and with knowledge of the fact, inserted in said deed a larger number of acres than was contained in the farm, and procured payment of and security for a larger sum of the purchase money than was agreed to be given therefor by the article of agreement—thus alledging both mistake as to quantity, and fraud in the conveyance of the farm, and in procuring security for the

purchase money. These allegations of the complaint were denied by the answer. The plaintiff also alledged that a sufficient sum to satisfy the mortgage, deducting the number of acres short in said farm, was tendered to the defendant, and such amount brought into court, and a satisfaction piece demanded. And that after the making of such tender, the defendant proceeded to make foreclosure of said mortgage of $1100. The plaintiff charged that she had only 78 acres of land, and had already paid, and secured the payment, for 88 acres; and that with the meadow lot of eight acres, for which the plaintiff had agreed to pay, when the defendant furnished a good and sufficient title thereto, she would in fact only have 86 acres in all; whereas the defendant, if she be permitted to collect the whole amount of said mortgage of $1100, would have succeeded in procuring payment for 96 acres of land, at $60 per acre. The plaintiff alledged in her complaint that the litigation and dispute in reference to said meadow lot of eight acres, had been closed, and that the defendant had been and was able to obtain and give to the plaintiff a perfect title thereto, or some part thereof, and had been requested so to do, but that she utterly declined and refused to obtain and give any such title. The defendant denied that she had been able to obtain and give such title to some or any part thereof. The plaintiff, in her reply, stated that the defendant could have obtained such title upon a settlement of such litigation and dispute, and that a title was already executed to her, which the plaintiff gave notice was satisfactory. But that the defendant refused and still refused to obtain or give any such title. The plaintiff demanded the following relief: 1st. That the defendant be restrained from any further proceedings in the foreclosure of said mortgage, and in the collection of the amount secured thereby, and that she execute a satisfaction thereof. 2d. That the defendant perform the contract on her part, so as to obtain and convey, or procure for the plaintiff, the title to the meadow lot of eight acres. 3d. Other and further relief, &c.

The cause was tried at the Dutchess circuit, in December, 1849, before Justice Barculo. The plaintiff introduced and read in evidence the article of agreement, for the sale of the farm and

Faure *v.* Martin.

premises described in the complaint, and a copy whereof was set out in the defendant's answer; the deed of the said premises, dated the 1st day of April, 1847, from Catharine Martin to the plaintiff; and the article of agreement, mentioned and set forth in the plaintiff's reply, and executed at the time of the giving of the deed, on the 1st of April, 1847, as to the eight acre meadow lot. It was admitted by the parties, as if proved in the cause, that the dispute in reference to the eight acre lot had been terminated adversely to the claims of the said Catharine Martin. The plaintiff also offered to prove that a sufficient sum to satisfy the same, deducting the number of acres short in said farm, was, on the 25th day of May, 1849, duly tendered to the defendant, by the plaintiff, on the $1100 mortgage, and a satisfaction of the same demanded, which the defendant refused; and that said sum was afterwards paid to the clerk of the county of Dutchess, as stated in the complaint. Also, that the premises described in said mortgage were advertised for foreclosure, as set forth in the plaintiff's complaint, and the sum of $1183,23, the whole amount of said mortgage, was claimed by the defendant to be due on the same at the first publication of the notice on the 4th day of July, 1849. The plaintiff then offered to prove by a surveyor, that there was in fact only 86 acres in said farm, instead of 96 acres, as represented in the agreement and deed; and which was unknown to the plaintiff until after the deed and mortgage were executed. To the introduction of this evidence, the defendant's counsel objected, and the court rejected it. The plaintiff then offered to prove a mistake in the quantity of land supposed to be contained in the farm; and that it in fact contained ten acres less than represented in the said agreement and deed; to the introduction of this evidence the defendant's counsel also objected, and the court rejected the evidence. The plaintiff then offered to prove, that the said farm contained only 86 acres, instead of 96 acres; and that the defendant at the time of making the agreement and also at the time of executing the deed, fraudulently concealed the fact from the plaintiff; to this evidence the defendant's counsel objected, and the court also rejected it. The plaintiff's counsel then of-

fered to prove, that at the time of making said agreement, and also at the time of executing the deed to the plaintiff, the defendant fraudulently represented the farm to contain 96 acres, when she knew from surveys and title deeds in her possession, unknown to the plaintiff, that it contained in fact but 86 acres. To the introduction of this evidence the defendant's counsel objected; the court rejected it, and the plaintiff's counsel excepted. His honor, the justice, further decided, that under the pleadings, no evidence could be received of fraud, or mistake in the quantity of land contained in said farm; that the sale under said contract was a sale in bulk, and not by the acre; and that the plaintiff was not entitled to any allowance for a deficiency in the quantity of land. To this ruling of his honor the plaintiff's counsel excepted.

The plaintiff's counsel then offered to prove, that after the termination of the suit in reference to the eight acre lot, and upon a settlement of the mesne profits by said defendant, and since that time, the defendant was tendered a deed of the same by the parties who recovered it, at $60 per acre, and requested to accept it; and that the plaintiff notified her it was satisfactory, and that she refused to receive it; that such deed was now ready, signed by various owners residing at different places, to be delivered as aforesaid. To the introduction of this evidence the defendant's counsel objected, and the court rejected it; to which the plaintiff's counsel excepted. The judge directed the plaintiff to be nonsuited, and she appealed.

*J. Thompson* and *J. Rowley*, for the appellant.

*W. Eno*, for the respondent.

*By the Court,* BARCULO, J.   I. The case turns, mainly, upon the construction which is to be put upon that clause of the agreement by which the defendant agrees to sell to the plaintiff, " All that certain farm, or lot of land now in her possession, and whereon she resides, and whereof the said Jacob Martin died seised, containing ninety-six acres, be the same more or

Faure *v.* Martin.

less, for the sum of sixty dollars per acre; to be paid by the said party of the second part in manner and at the time hereinafter mentioned." The plaintiff's counsel contends that the sale of the farm was by the *acre*, and not in *bulk;* and, consequently, that she is only to pay for the actual number of acres, at the rate of sixty dollars an acre; while the defendant claims that she is entitled to the amount of purchase money which results from assuming the quantity to be ninety-six acres, and multiplying it by sixty. It is our business to determine which of these positions is correct.

In his commentaries, Chancellor Kent lays down the rule thus: " Whenever it appears by the definite boundaries, or by words of qualification, as 'more or less,' or, 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed is mere matter of description, and not the essence of the contract, and the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case." (4 *Kent's Com.* 446.) Here the plaintiff contracted for the purchase of a *farm*, described as containing ninety-six acres, *more or less*. The mention of the quantity was, evidently, merely descriptive, and not of the essence of the contract. There is no covenant that the farm shall contain any specified quantity of land, nor any provision for a survey, or other means of ascertaining the exact number of acres. The number, " ninety-six," was used only to determine the amount of the purchase money. The contract, in this respect, is of the same import and effect as if it had been a sale of the farm for $5760.

II. The evidence offered, to prove fraud and mistake, on the trial, was properly rejected, for the reason that the plaintiff had not framed her complaint to meet such a state of facts. For although she does state that the defendant falsely and fraudulently caused to be inserted in the *deed* a larger number of acres than is contained in said farm, the complaint is wholly destitute of the necessary allegations to impeach the *agreement*, on the ground of fraud or mistake.

III. Another difficulty encountered by the plaintiff, arises from the lapse of time, and acceptance of a deed. The contract

was made September 11th, 1846. On the 1st of April, 1847, she accepted a deed, paid nearly three-fourths of the purchase money, and secured the residue by bond and mortgage, and paid the interest thereon up to the year 1849. The agreement has been consummated, and the plaintiff is too late to avail herself of the pretense that she purchased by the acre, or that the contract was fraudulent.

We think, therefore, that the nonsuit was properly granted, so far as relates to that branch of the subject.

But we think that the defendant was bound, on request, to receive the deed of the eight acre lot, and thus perfect the plaintiff's title: for she covenants to convey so much of the same *as she can obtain.* The plaintiff shows that she can now obtain the whole. She must therefore be decreed to receive and accept the deed offered, on being paid the purchase money therefor. Neither party is to have costs of the appeal.

Judgment accordingly.(*a*)

[KINGS GENERAL TERM, October 6, 1851. *McCoun, Morse* and *Barculo*, Justices.]

(*a*) Affirmed in court of appeals.