[Civ. No. 8140. Second Appellate District, Division Two.—December 29, 1933.]

LOPEZ CANYON OIL COMPANY (a Corporation), Appellant, v. KNUTE LOFQUIST, as Executor, etc., Respondent.

Leo E. Anderson and Meserve, Mumper, Hughes & Robertson for Appellant.

Earle K. Stanton and M. R. Van Wormer for Respondent.

ARCHBALD, J., *pro tem.*—This is an appeal from a judgment entered after an order sustaining defendant's demurrer to plaintiff's first amended complaint.

The original defendant, R. W. Nuttall, died after the filing of this appeal and an order was made substituting as defendant the executor of his last will and testament.

By its amended complaint plaintiff seeks to recover from the original defendant four separate sums alleged to be due it from him, alleging that he was the secretary of plaintiff corporation for some time prior to September 20, 1913, and for six months thereafter, and that during such time and until December 29, 1919, he "dominated the said company, kept, made and had the entire control of the records and of the finances of said corporation". The first cause of action seeks to recover the sum of $13,920, being the balance remaining, after payment to himself of $1800 for defendant's services as secretary, of the sum of $15,720 collected by defendant on an assessment levied September 20, 1913, by the corporation on its issued capital stock. Such count also asks interest on said balance at the statutory rate of seven per cent per annum from January 1, 1914. The second cause of action claims the sum of $4,161, being the balance left out of $4,761 collected by defendant on another assessment levied on the issued stock of such corporation on January 14, 1918, after payment of $600 then due Nuttall for salary as such secretary. Interest is also claimed on said balance from April 29, 1918. The third cause of action asks for the return and cancellation of 49,999 shares of the capital stock of plaintiff corporation, or in default thereof damages in the sum of $49,999 with interest from January 14, 1918, at the statutory rate, alleged to be due from Nutt-

all by reason of his conversion on or about January 14, 1918, of said 49,999 shares of plaintiff's capital stock, allegedly returned to said corporation by one A. L. Darrow, to whom it was issued by such corporation pursuant to the latter's unexecuted agreement to obtain money to sink a test well on property adjoining that of plaintiff. The fourth cause of action seeks the return and cancellation of 6,750 shares of plaintiff's capital stock, transferred to Nuttall on September 10, 1910, by Darrow from stock given Darrow on his said unexecuted agreement, or in default thereof damages in the sum of $6,750 with interest from September 20, 1913.

The amended complaint further alleges, in paragraph III of the first cause of action, adopted by reference in the other causes of action, for the purpose of bringing plaintiff's action within the statutory period limiting the commencement of such actions, "That since the 1st day of January, 1914, *defendant has actively prevented plaintiff from ascertaining the true facts* concerning the said transaction, *and has actively prevented any other stockholders of plaintiff from ascertaining the true facts* as to said transaction; *that by reason of the foregoing plaintiff did not ascertain the true facts and was unable to ascertain the true facts, and first received the information which led to the investigation and to the subsequent ascertainment of the facts on or about the 4th day of September, 1928;* that the true facts were not actually ascertained and definitely determined until on or about the 1st day of September, 1929." (Italics ours.) Paragraph IV of the second cause of action contains the following additional explanatory allegations, adopted by reference in the third cause of action, "That ever since the 29th day of April, 1918, defendant [Nuttall] has falsely and fraudulently and with intent to defraud plaintiff, represented and stated that defendant had no funds belonging to plaintiff and falsely and fraudulently represented and stated that plaintiff was without funds; that plaintiff believed and relied on said representations and statements; that defendant had complete control of the records, finances and transactions, if any, of plaintiff and for this reason plaintiff has been and was unable to ascertain the true facts."

We have set out *verbatim* the language appellant urges is sufficient to make its complaint secure against the attack

of respondent's general demurrer, which raises the bar of the statute.

It does not appear from the record before us when the original complaint was filed, but we must assume that it was not before the admitted discovery of the alleged fraud, on or about September 4, 1928. It will be seen, therefore, that the conversion alleged in the first count took place over fourteen years prior to such alleged discovery, in the second and third counts more than ten years, and in the fourth more than fifteen years. It is also to be observed that in the first count defendant is alleged to have been the secretary "on September 20, 1913", for some time prior thereto "and for six months thereafter", and that during such time, viz., while he was acting as secretary and to and including December 29, 1919, he completely dominated plaintiff company and had complete control of its records. Nowhere is it alleged that such domination continued longer.

■ The rule of pleading governing the statement of a cause of action shown to have accrued beyond the statutory period of limitation barring suit thereon is set forth in the leading case of *Lady Washington Consolidated Co.* v. *Wood,* 113 Cal. 482, 487 [45 Pac. 809, 810]. It is there stated that it is not enough to aver that plaintiff was ignorant of the facts at the time of their occurrence and has not been informed of them until a time within the statutory period, but "he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information which would put him on an inquiry which, if followed, would lead to knowledge, he will be deemed to have had actual knowledge of these facts". ■ The plaintiff here is the corporation itself, not some stockholder who is suing in its behalf; and it is peculiar, to say the least, that the corporation, having levied an assessment in 1913, should, still believing that an individual not then its secretary had in his possession $13,920 raised on a former assessment, levy another assessment in 1918 through its board of directors and again permit such individual to collect and retain such additional funds. And what were the directors doing

through the later years, after such domination admittedly ceased, that they failed to discover the frauds alleged? Perhaps the answer is the best explanation as to why plaintiff has failed to state the necessary circumstances excusing the late discovery but has contented itself with alleging conclusions only by way of excuse, except for the statement that the ex-secretary dominated the corporation and had complete control of its records until December 29, 1919. What of the period of nearly nine years thereafter, when such domination apparently had ceased and during which plaintiff still failed to discover the alleged fraud? In our opinion the amended complaint fails to set out any circumstances *showing how the facts* constituting the fraud were brought to plaintiff's knowledge, or any facts that would justify a court in determining that plaintiff did not have full means of discovering all of the facts alleged when the new secretary took charge; and we must assume that a new one took charge, or that the directors themselves knew, or at least should have known, all about the alleged irregularities at a much earlier date than that upon which the alleged domination of Nuttall admittedly ceased, and no excuse is attempted to show why such discovery was not made after such domination ended. It would seem that the continued domination of the affairs of the corporation by a man who, so far as the complaint shows, was a mere stranger to it was sufficient to put plaintiff upon notice of all that is alleged. In this connection see the case of *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268], where the Supreme Court reaffirmed the rule and held a complaint defective where it was alleged that certain defalcations of a director were concealed by reason of the misrepresentations of other directors and falsification of the minutes, and so were not discovered until a period within the statute.

In our opinion the demurrer on the ground of uncertainty, in that it could not be ascertained from the complaint what defendant did in actively preventing plaintiff and its stockholders from ascertaining the true facts, was well taken. It would seem to have been something more than the mere control of the records during the time he was acting as secretary that prevented discovery; and just how he could have continued to keep possession of such records after his term of office expired would seem to be such an

unusual thing that it is not answered by the statement that what defendant did was a matter within his own knowledge and so there could be no uncertainty. And just how he could have *actively prevented inquiry* after he ceased to be secretary and no longer dominated the company is very uncertain.

Judgment affirmed.

Stephens, P. J., and Craig, J., concurred.