[Civ. No. 10623. First Appellate District, Division One.—February 24, 1939.]

WALTER TURNER et al., Appellants, v. IRVING M. LINER et al., Respondents.

Leo A. Sullivan, John G. Robertson, A. K. Whitton and Charles H. Frost, Jr., for Appellants.

Irving M. Liner, *in pro. per.*, for respondents.

CONLAN, J., *pro tem.*—This action was brought by the plaintiffs for the recovery of damages and secret profits in a real estate trade, resulting from the possession by the defendants, who were the plaintiffs' agents, of individual interests in the real estate traded which were adverse to those of the plaintiffs in the course of the transaction, without any knowledge thereof or consent thereto on the part of the plaintiffs.

A demurrer was interposed to plaintiffs' complaint which was sustained. The plaintiffs filed an amended complaint to which another demurrer was addressed and which was likewise sustained. The plaintiffs then filed their second amended complaint and the defendants again demurred thereto. This demurrer was also sustained. Upon failure of the plaintiffs to amend the third time, judgment was thereupon entered in favor of the defendants on May 19, 1937.

Plaintiffs allege in their second amended complaint that on or about August 22, 1928, they employed the defendants to act as their brokers and agents in the matter of an exchange of a certain parcel of real property then owned by plaintiffs (therein referred to as parcel I) for another certain parcel of real property (therein referred to as parcel II); that the defendants accepted this employment; that the defendants represented to them that parcel II was owned by one Annah L. Wood; that thereupon an "Exchange Agreement" was

entered into and executed whereby Annah L. Wood deeded parcel II to plaintiffs and plaintiffs deeded parcel I to Annah L. Wood, paid her the sum of five thousand dollars ($5,000) and executed their promissory note to Annah L. Wood in the sum of five thousand dollars ($5,000); that on or about February 1, 1934, an action was brought to collect the balance due upon the above-mentioned promissory note by the holder in due course thereof; that in said action and on or about February 16, 1934, the plaintiffs herein, through their attorneys, took the deposition of Annah L. Wood and from said deposition ascertained for the first time that Annah L. Wood was not and never had been the true owner of parcel II, but that the defendants themselves were in truth and in fact the owners thereof; that the defendants themselves took and obtained for their own use the above-mentioned sum of five thousand dollars ($5,000) and the above-mentioned promissory note; that plaintiffs did not sooner discover that Annah L. Wood was not the owner of said property, but that said property was in fact owned by the defendants, by reason of the following facts: that at all of the times herein mentioned up to the 18th day of February, 1934, plaintiffs reposed great trust and confidence in the defendants and in reliance upon that trust believed and trusted that defendants had acted in the transaction only in the capacity of plaintiffs' agents and brokers; that the defendants have, at all of the times mentioned, held themselves out to be and represented that they acted as the plaintiffs' agents and brokers; that in the "Exchange Agreement" referred to it was provided as follows: "Morris N. Schneider Co. of Oakland, California, is hereby authorized to act as agent for all parties hereto and may accept commission therefrom and should this offer be accepted by the second party the undersigned agrees to pay said agent $500.00 commission for services rendered to become due on the execution of this agreement by all parties hereto. Dated: August 22, 1928. Signed Margaret Turner"; that pursuant to said provision and in reliance upon the representation therein made plaintiffs believed that defendants acted only as their agents and brokers and paid said $500 commission to the said defendants; that in said "Exchange Agreement" wherein and whereby the proposed exchange was set forth, the said Annah L. Wood was described and named as "second party" and owner of the prop-

erty to be acquired by the plaintiffs; that on several occasions between August 23, 1928, and February 16, 1934, plaintiffs made visits to the offices of Morris N. Schneider Co. and there spoke and conversed with defendants, but at no time did defendants claim to plaintiffs to have any interest in said property; that at no time did defendants claim to have any interest in said property to any persons from whom plaintiffs might have ascertained such fact; that on or about the 23d day of August, 1928, at the time of the exchange of the properties hereinabove referred to, the real property (parcel II) stood in the name of Annah L. Wood on the official records of Alameda County at the office of the recorder of the county of Alameda, state of California; that plaintiffs made visits on several occasions between August 23, 1928, and February 16, 1934, to the offices of Morris N. Schneider Co., but were never apprised of the fact nor did they discover or have knowledge that Annah L. Wood was in the employ of defendants, and it was not until the time of the taking of the deposition of Annah L. Wood, on February 16, 1934, that such fact came to the knowledge of the plaintiffs; that no cause or reason existed for the taking of said deposition until the action of *Spencer* v. *Turner* above referred to was brought, and said deposition was then duly, regularly and timely taken to aid these plaintiffs in preparing their defense to said action; that at no time until the taking of said deposition of Annah L. Wood did any facts at all exist which would indicate to the plaintiffs or give them knowledge, ground for believing, or reasons to believe that defendants were the owners of said property and that Annah L. Wood was not the owner thereof.

In their demurrer to this second amended complaint the defendants urged the bar of the statute of limitations claiming, more specifically, that said amended complaint did not allege sufficient facts to show a justification on the part of the plaintiffs for not discovering the fraud sooner than they did, so as to bring the action within the rules of pleading laid down by the case of *Lady Washington C. Co.* v. *Wood,* (1896) 113 Cal. 482 [45 Pac. 809], and the more recent case of *Haley* v. *Santa Fe Land Imp. Co.,* (1935) 5 Cal. App. (2d) 415 [42 Pac. (2d) 1078]. The defendants' contention was upheld by the trial court and the demurrer was sustained. Upon the plaintiffs' failure to amend, judgment was entered

for defendants and it is upon that judgment that plaintiffs prosecute this appeal.

Appellants state in their opening brief: ''Appellants concede as established law in this state the soundness of the rules laid down in the cases of *Lady Washington Co.* v. *Wood,* (1896) 113 Cal. 482 [45 Pac. 809], and *Haley* v. *Santa Fe Land Co.,* (1935) 5 Cal. App. (2d) 415 [42 Pac. (2d) 1078], to the effect that in cases where relief is sought from fraud by action commenced more than three years after the perpetration of the fraud the complaint must contain allegations as to the time when the fraud was discovered, how the discovery was made and why it was not made sooner. The controversy upon this appeal is whether the second amended complaint meets all the requirements (particularly the latter one) of this rule.''

The respondents contend that: ''The complaint falls very short of stating any fraud, or deceit or damage. Plaintiffs do not plead any misrepresentation or inducement by defendants to plaintiffs to make the purchase or any fraud or deceit in any form. It seems to be the theory upon which the complaint is drafted that defendants owed to plaintiffs the disclosure of their ownership of the property. However, plaintiffs make no allegation that in the event of such disclosure they would not have purchased the property. It is defendants' contention that, assuming the agency relationship for the purpose of this argument, their only duty was to refrain from misrepresenting the property or using any fraud or deceit to carry the deal through. From the facts alleged in the complaint there is nothing which would show that the actual ownership had a bearing upon the transaction. Plaintiffs by their own admission exercised their own judgment and do not allege that they were influenced by any word or conduct of defendants.'' Plaintiffs further alleged on information and belief ''that the cost to defendants of the property exchanged by them for the property of plaintiffs was $10,000.00 less than the amount for which they sold it to the plaintiffs''.

On oral argument the appellants withdrew the point urged by them on appeal that the defendants' demurrer to plaintiffs' second amended complaint did not properly raise the question of the statute of limitations. The plaintiffs did not abandon their contention that the complaint stated facts suffi-

cient to constitute a cause of action to toll the statute of limitations.

In *Lady Washington C. Co.* v. *Wood, supra,* it is stated: "'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud' within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must themselves be pleaded. It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts. These principles are so fully recognized that mere reference to some of the cases in which they have been enforced will be sufficient. (*Martin* v. *Smith,* 1 Dill. (Fed.) 85; *Wood* v. *Carpenter,* 101 U. S. 135 [25 L. Ed. 807]; *Hecht* v. *Slaney,* 72 Cal. 363 [14 Pac. 88]; *Moor* v. *Boyd,* 74 Cal. 167 [15 Pac. 670]; *Lataillade* v. *Orena,* 91 Cal. 565 [27 Pac. 924, 25 Am. St. Rep. 219].)"

In the case of *Phelps* v. *Grady,* 168 Cal. 73 [141 Pac. 926], the interveners alleged that Mrs. Phelps was the widow of their mother's brother and because of this relationship they believed she would deal with them in all respects fairly and justly, and that so believing they relied upon these representations and parted with their interest to her. The interveners lived outside of the state of California. The land purchased was situated in San Mateo County, California. The court states, in part, in upholding the contention that the

statute of limitations applied and the cause of action was barred, on page 80: "There is an absolute failure to show not only due diligence but any diligence in seeking to discover during all this intervening time whether or not they had parted with their property at a fair valuation. The fact that they lived at a distance is of course no excuse. They were under no other disability."

In the instant case it will be noted that the parcels of land exchanged were in the county of Alameda and that the complaint alleges the plaintiffs were in the office of the defendants divers times after the exchange. In the case of *Phelps* v. *Grady, supra,* the relationship of the parties was closer than that of the parties in the instant case, for the agency of the defendants in the instant case was at an end upon the consummation of the exchange.

The case of *Lady Washington Consol. Co.* v. *Wood, supra,* is quoted with approval in *Haley* v. *Santa Fe Land Imp. Co., supra.*

In the case of *Bennett* v. *Lane Mortgage Co.,* 19 Cal. App. (2d) 515 [65 Pac. (2d) 953], cited by appellants, the transaction took place in 1928 and the interest payments were kept up until April, 1932. The fraud was not discovered until 1935. It appears from the facts in this case that for twenty years the plaintiff had trusted the defendant Lane with her investments; that "the defendants, who, because of their long years of dealings with the plaintiff, enjoyed her confidence, told her repeatedly to rely on them, that she had only to wait, they would protect her interests, she need not investigate". Defendant Lane was the plaintiff's investment adviser. A fiduciary relation existed. In the instant case no such relation continued to exist after the exchange. The complaint in the instant case does not show that during the several visits between August 23, 1928, and February 16, 1934, made by the plaintiffs to the office of Morris N. Schneider Co., any person connected with that company acted as an investment adviser for the plaintiffs, or that the plaintiffs were in any infirm, mental or physical condition which would necessitate the advice of the defendants. The allegations of the complaint do show that the plaintiffs were in Alameda County at divers times and were in a position to inquire into the value of this real estate had they chosen to do so.

In the case of *Monmouth College* v. *Dockery*, 241 Mo. 522 [145 S. W. 785], cited by appellants, the facts show that the firm of Dockery and Hilbert were investment agents or brokers for the plaintiff; that the notes given in the transaction, as well as notes given in other transactions, were made payable at the office of Dockery and Hilbert; that the plaintiff investigated the reputation of the firm of Dockery and Hilbert and was informed that this firm had an excellent reputation; that plaintiff made Dockery and Hilbert their exclusive agents; and that Dockery and Hilbert collected the interest on the notes and remitted the same to the plaintiff. This case holds that a relation of trust and confidence existed which the defendant could not take advantage of by pleading the five-year statute of limitations.

In the instant case the facts as pleaded show no connection of the defendants with the plaintiffs even so far as collecting rents, but on the contrary the facts as alleged show an isolated exchange transaction thereafter accompanied by frequent visits by the plaintiffs to the office of the defendants.

An examination of the case of *Victor Oil Co.* v. *Drum*, 184 Cal. 226, 240 [193 Pac. 243], cited by appellants, shows that at the time of the discovery of the fraud the "defendants were still, if not in complete control of the corporation, at least the most important factors in it, and were its managing officers". This case is not in point.

In the case of *Teague* v. *Hall*, 171 Cal. 668, 671 [154 Pac. 851], cited by appellants, the statute of limitations was not involved. The court states the general rule applicable to fraud where there exists opportunities for examination, or of sources of information, and states that "the doctrine of constructive notice does not apply where there has been such a representation of fact."

The case of *Edwards* v. *Sergi*, 137 Cal. App. 369 [30 Pac. (2d) 541], cited by appellants, holds that the particular facts in that case, with reference to the statement of Joseph Sergi that a thickly wooded part of the tract was a part of the land for which she was negotiating, were not such as would reasonably put upon inquiry a prospective purchaser. This case states, on page 371, as follows: "Similarly, in *Lady Washington Consol. Co.* v. *Wood*, 113 Cal. 482 [45 Pac. 809], *Bancroft* v. *Woodward*, 183 Cal. 99 [190 Pac. 445], *Red Path* v.

*Aagaard,* 217 Cal. 63 [16 Pac. (2d) 998], and *Consolidated etc. Power Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268], the court was dealing with situations where a party had knowledge of facts of a character which would reasonably put upon inquiry a prospective purchaser. This is not the situation here confronting us. Appellants knew of the nature of the tract desired by respondent and that she wanted wooded land for summer homes. Appellant Joseph Sergi took plaintiff upon the land and there pointed out a tract thickly wooded and told her it was part of the land for which she was negotiating. It is well established that a person selling his own land is presumed to know the area and boundaries thereof, and if the purchaser suffers damage by reason of any misrepresentation on the part of the owner as to the extent or boundaries thereof the purchaser may recover damages. (*Eichelberger* v. *Mills Land & Water Co.,* 9 Cal. App. 628 [100 Pac. 117]; *Del Grande* v. *Castlehun,* 56 Cal. App. 366 [205 Pac. 18]; *Harder* v. *Allred,* 61 Cal. App. 394 [214 Pac. 1017].) So, too, while the record of an instrument is constructive notice of its contents, it is not constructive notice of any mistake contained therein. (*Davis* v. *Ward,* 109 Cal. 186 [41 Pac. 1010, 50 Am. St. Rep. 29]; *Anderson* v. *Willson,* 48 Cal. App. 289 [191 Pac. 1016].)''

Nor can we agree with appellants that the recent decision in *Rutherford* v. *Rideout Bank,* 11 Cal. (2d) 479 [80 Pac. (2d) 978, 117 A. L. R. 383], is here controlling, for the reason that the factual situation there is entirely different from the one here presented. As appears from said decision, the evidence in that case proved and the trial court found that during the existence of a confidential relationship between the plaintiff Mrs. Rutherford and one Taylor, the manager of a bank, which extended over a number of years, Taylor betrayed the trust reposed in him by accepting $2,500 from Robert J. Finnie, to induce Mrs. Rutherford by false and fraudulent representations to sell to Finnie for an inadequate price her valuable ranch, the representations so made by Taylor being that unless she made the sale a delinquent encumbrance on the ranch, and one on her home which was held by the bank, would be foreclosed and she would lose everything. The agreement to sell to Finnie was obtained in December, 1920, but the confidential relationship between Mrs. Rutherford and Taylor continued on up to September,

1927, when she learned for the first time, through certain documents which were shown to her, of the corrupt bargain between Taylor and Finnie; and within two months thereafter she brought her action for damages. As will be seen, there is no similarity of facts between that case and this one; nor do we find any law declared in the decision therein which conflicts with the views herein expressed.

We are of the opinion that the rules laid down in *Phelps* v. *Grady, supra,* and *Lady Washington Consol. Co.* v. *Wood, supra,* are applicable to the facts as alleged in the instant case. Both parcels of land were situate in Alameda County and there are no allegations in the second amended complaint showing any fiduciary or confidential relation between the parties.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.